UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATHANIEL E. SHARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:15-cv-01231-DML-LJM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Nathaniel E. Sharp applied in 2012 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging he has been disabled since May 30, 2012.  Acting for the Commissioner of the Social Security Administration following a hearing held on January 31, 2014, administrative law judge Belinda J. Brown issued a decision on March 7, 2014, that Mr. Sharp is not disabled. The Appeals Council denied review of the ALJ's decision on June 11, 2015, rendering the ALJ's decision for the Commissioner final.  Mr. Sharp timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Sharp contends the Commissioner's decision must be reversed and remanded because the ALJ (1) did not obtain an updated medical opinion on whether, as a result of Mr. Sharp's leg length discrepancy, a listing was met or

medically equaled and (2) did not properly evaluate his mental impairments or the evidence of his leg, hip, and back pain.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Mr. Sharp's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr. Sharp is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Sharp was born in 1962, was 50 years old when he filed his applications for disability benefits, and was 51 years old at the time the ALJ issued her decision. Mr. Sharp's work experience going back about 12 years before he applied for benefits was always physically demanding. He worked as a parts inspector, in packing and shipping, and as a mixer for a food company. All of his work required standing or walking all day long and much of it required heavy lifting. His most recent job at the food company lasted from June 2010 through June 2012, required 12 hour work days (four days per week), and the ability to regularly lift and carry 50 to 80 pound bags a few feet. *See* R. 165-175. According to Mr. Sharp, he stopped working because he and his employer felt he no longer was physically able to perform this job. His onset date coincides with his visit to a hospital emergency room because of complaints of leg pain over the previous months that was worsening. (R. 237-240).

In her sequential analysis, the ALJ found Mr. Sharp had not engaged in substantial gainful activity since his alleged onset date (step one), and had severe impairments of osteoarthritis of the bilateral knees, depression, anxiety, and polysubstance abuse (step two). The ALJ also noted that Mr. Sharp experienced low back pain and right hip discomfort, "which physicians have attributed to a leg

5

length discrepancy and mild hip osteoarthritis." (R. 13). At step three, she found no listings were met, and examined listing 1.02 (major dysfunction to a joint) and several mental health listings. In her RFC, the ALJ limited Mr. Sharp to light work (the ability to stand/walk/sit for six hours of an 8-hour work day, and the ability to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently) with occasional limitations on postural activities (climbing stairs and ramps, balancing, kneeling, crouching, and crawling). She also included accommodations for mental impairments by limiting Mr. Sharp's work to simple and routine tasks and only occasional contact with the public. (R. 16).

With this RFC and based on the opinion of a vocational expert, the ALJ concluded Mr. Sharp could not perform his past relevant work, all of which was performed at a much greater exertion level. His most recent work had been performed at the heavy level (defined as the ability to frequently lift and carry items weighing 50 pounds, 20 C.F.R. § 404.1567(b)). At step five, and also based on the opinion of the VE, the ALJ determined there are several light and unskilled jobs Mr. Sharp is capable of performing that exist in significant numbers in the relevant economy and therefore Mr. Sharp is not disabled.

## II. Mr. Sharp's Assertions of Error

Mr. Sharp's assertions of errors are in two categories. First, he challenges the ALJ's step three findings. Second, he challenges the ALJ's overall decision he can work despite mental health symptoms and chronic pain.

### A. The Alleged Step Three Error

Mr. Sharp contends the ALJ erred at step three because she did not obtain an additional medical opinion on whether he met listing 1.02 because of the discrepancy in the length of his legs. He asserts the ALJ could not reasonably have relied on the opinions of the state agency reviewing physicians that no listing was met because they had not reviewed a medical record dated May 27, 2013, which reported Mr. Sharp's statement that his right leg is shorter than the left leg because of an accident in childhood in which his leg bone was fractured. (*See* R. 253).

The court agrees with the Commissioner that the ALJ did not err by not obtaining an additional medical opinion regarding whether Mr. Sharp met or equaled listing 1.02. As the ALJ noted, listing 1.02 requires, among other things, a bone or joint deformity that causes a "functional loss," defined as the "inability to ambulate effectively on a sustained basis for any reasons, including pain associated with the underlying musculoskeletal impairment." *See* description at Listing 1.00.B.2.a. In turn, the "inability to ambulate effectively" means an "extreme limitation of the ability to walk." Listing 1.00.B.2.b. The ALJ found the evidence showed Mr. Sharp is ambulatory, even without an assistive device, and he had a normal gait and posture without an assistive device. (R. 14, 17). These findings are based on the conclusions of a doctor who conducted a physical examination of Mr. Sharp in October 2012—many, many years after Mr. Sharp suffered the right leg fracture resulting in his leg length discrepancy. Moreover, as the ALJ noted, the

7

only treatment suggested in the May 27, 2013 record for Mr. Sharp's leg length discrepancy was a right heel lift. (R. 17).

An ALJ is not required to obtain an updated medical opinion unless, in her opinion, (1) there are "symptoms, signs, and laboratory findings" in the record suggesting that a judgment of medical equivalence may be reasonable or (2) there is new evidence that may change the state agency doctors' findings that an impairment is not presumptively disabling at step three. *See* SSR 96-6p, 1996 WL 374180 at *3-4. The court cannot find that the existence of the single May 2013 record not reviewed by the agency physicians, which noted Mr. Sharp should use a right heel lift as a treatment for his leg length discrepancy (but never suggests Mr. Sharp has an inability to ambulate effectively as described in the listing), required the ALJ to doubt the continued reliability of the state agency doctors' findings and obtain a new medical opinion on medical equivalence to listing 1.02.

The court therefore rejects Mr. Sharp's contention that the ALJ erred by not obtaining an updated medical opinion at step three.

### B. Evaluation of Mental Health Symptoms and Pain

Mr. Sharp's other errors relate to the ALJ's RFC, by challenging the ALJ's evaluation of certain evidence related to his mental impairments and to his pain symptoms.

He asserts the ALJ did not properly evaluate the effects of his mental impairments because she did not mention three items from mental health records:

8

a description of Mr. Sharp's thinking at one appointment as "tangential"[2]; a report by Mr. Sharp that he once heard his name being called when it was not (which Mr. Sharp characterizes as an auditory hallucination); and a description of Mr. Sharp as "disheveled and unkempt" at a single one of his appointments.[3] (Dkt. 20 at p. 7). These are nit-picks at the ALJ's evaluation of Mr. Sharp's mental health records.

The ALJ's omission of these three notations do not detract from her overall evaluation of the effects of Mr. Sharp's mental impairments (for purposes of deciding severity and an RFC) on his activities of daily living, social functioning, and concentration, persistence, or pace. She cited substantial evidence to support her determinations (a) Mr. Sharp carries out "high-level daily activities" indicating his mental impairments pose only mild difficulties in activities of daily living (b) he can suffer moderately in social functioning (based on complaints of anxiety, suspicion, and paranoia) but contrasted with evidence he socializes well with family and friends, other residents at the homeless shelter, and engages easily with case managers, social workers, and medical professionals, and (c) his psychological evaluations do not indicate cognitive deficits or impairment in attention, concentration, or memory. (R. 15, 16). The ALJ provided an accommodation to Mr. Sharp for the "no more than moderate" difficulties with social functioning by limiting his conduct with the public. Thus, contrary to Mr. Sharp's contention (Dkt. 20 at p. 13), the ALJ did not omit from the RFC an accommodation for moderate

---

[2] Other appointments describe Mr. Sharp's thought process as logical. *E.g.,* R. R. 277, 279.

[3] Other appointments describe Mr. Sharp as well-groomed. *E.g.,* R. 279, 286.

impairment in social functioning. The court rejects Mr. Sharp's argument that the ALJ failed to rationally evaluate and support with substantial evidence her conclusions regarding the limiting effects of his mental impairments and the extent to which they required accommodation in the RFC.

With respect to Mr. Sharp's pain symptoms and his leg length discrepancy, the court also finds the ALJ supported her analysis with substantial evidence. Although Mr. Sharp does not directly challenge the ALJ's credibility assessment, he does so implicitly by contending the ALJ did not appropriately accommodate the pain he feels when walking, standing, and lifting. Such a challenge is unavailing. She considered that his pain complaints are not supported by the objective medical evidence (a finding that is well-supported), they can be somewhat controlled through medication (noting Mr. Sharp's testimony that his pain, on a 1-10 scale, is at 7 without medication but at 4 with medication), and are inconsistent with some activities he engages in (walking to doctor's appointments and the library). She also cited an instance of an inconsistency between Mr. Sharp's testimony at the hearing and reports to doctors (regarding sobriety), and found that this inconsistency detracted from the overall reliability of Mr. Sharp's descriptions of his limitations.

The ALJ also determined, however, that Mr. Sharp should be limited to the rigors of light work, rather than medium work the state agency physicians determined he was capable of doing. She thus accommodated Mr. Sharp's complaints of the limiting effects of his pain, just not as much as he would have liked her to.

In sum, because the ALJ relied on evidence that rationally supports her decisions (a) to not accord full credibility to Mr. Sharp's testimony about his pain and difficulties with standing and walking and (b) to allow light work based on the overall record, there is no basis for the court to reverse the Commissioner's decision.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Mr. Sharp was not disabled.

So ORDERED.

Dated:  September 22, 2016

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system